**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ndeckant@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSEA MARQUEZ, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>GOOGLE, LLC,<br><br>            Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chelsea Marquez ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, make the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF ACTION

1.      Defendant Google, LLC ("Defendant" or "Google") has developed and provides a customer service product called Google Cloud Contact Center AI (hereafter "GCCCAI") as a software-as-a-service.

2.      GCCCAI is employed by numerous entities, including Uber Technologies, Inc. ("Uber") to monitor voice and text-based interactions.

3.      Uber contracted with Google and its GCCCAI service to respond to customers who call from California and across the nation to, among other things, receive support through these channels ("Contact Centers").

4.      By virtue of providing the GCCCAI service, however, Defendant also records, accesses, reads, and learns the contents of conversations between Californians and Uber customer service representatives.  And, crucially, neither Defendant nor Uber procure the prior consent, express or otherwise, of any person who interacts with Uber's customer service agents, prior to Defendant recording, accessing, reading, and learning the contents of conversations between Californians and Uber's customer service representatives.

5.      Through its use of GCCCAI, Defendant has failed to comply with the California Invasion of Privacy Act ("CIPA") §§ 631.

6.      Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages for Defendant having recorded, accessed, read, and learned the contents of conversations between Californians and Uber without procuring prior consent, in contravention of CIPA §§ 631.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES**

7.      Plaintiff Chelsea Marquez resides in Sacramento County, California and has an intent to remain there, and is therefore a citizen of California.  Ms. Marquez, an account holder with Uber, was in California when she spoke to a representative from Uber over the phone from her home in or about September 2025.

8.      Defendant Google, Inc. ("Google" or "Defendant") is a Delaware limited liability company, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California, 94043.  Google does business throughout California and the entirety of the United States.  Google provides a customer contact and support solution called "Google Cloud Contact Center AI," which is at issue here and described more fully below.

9.      At all relevant times, Uber contracted with Google and its GCCCAI service.

**JURISDICTION AND VENUE**

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

11.      This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 Defendant resides in this District.

**FACTUAL BACKGROUND**

**I.      THE CALIFORNIA INVASION OF PRIVACY ACT**

13.      The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens.  The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications ... has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Penal Code § 630.

14.    As the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).

15.    As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from (i) "intentionally tap[ping], or mak[ing] any unauthorized connection ... with any telegraph or telephone wire," (ii) "willfully and without the consent of all parties to the communication ... read[ing], or attempt[ing] to read, or to learn the contents or meaning of any ... communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or (iii) "us[ing], or attempt[ing] to use ... any information so obtained."  CIPA § 631(a) also penalizes those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping.

16.    Individuals may bring an action against the violator of CIPA § 631 for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).

## II.    DEFENDANT VIOLATES THE CALIFORNIA INVASION OF PRIVACY ACT §§ 631(A)

17.    Uber has partnered with Google Cloud to "help[] create a stronger and more empowered Workforce."[1]

18.    Specifically, according to Uber CEO Dara Khosrowshahi, Uber is "using Google Cloud's AI platform to build [their] own AI agents to help their support teams."[2]

---

[1] GOOGLE CLOUD, YOUTUBE, https://www.youtube.com/watch?v=T4DHSJyy08Y.

[2] *Id.*

19.     In regard to Uber's "customer service representatives, the company launched new tools that summarize communications with users and can even surface context from previous interactions, so front-line staff can be more helpful and effective."[3]

20.     This GCCCAI technology is a "human-like generative AI powered contact center" that, among other things, "empowers human agents with continuous support during their calls and chats by identifying intent and providing real-time, step-by-step assistance" and "uses natural language processing to identify call drivers and sentiment that helps contact center managers learn about customer interactions to improve call outcomes."[4]

21.     When a consumer calls into a GCCCAI-powered contact center, they may first be presented with a virtual agent provided by Google.  Virtual agents are not identified as being provided by Google, and so consumers reasonably believe the virtual agent is provided by the company they are calling.

---

[3] AI IS HERE, AI IS EVERYWHERE: TOP COMPANIES, GOVERNMENTS, RESEARCHERS, AND STARTUPS ARE ALREADY ENHANCING THEIR WORK WITH GOOGLE'S AI SOLUTIONS, https://cloud.google.com/transform/101-real-world-generative-ai-use-cases-from-industry-leaders.

[4] CONTACT CENTER AI, https://cloud.google.com/solutions/contact-center.

22.     Regardless, if a consumer requests to speak with a human agent, the virtual agent transfers the consumer – along with a transcript of the conversation up until that point – to a human agent:[5]



The call gets routed to an agent through the partner telephony

23.     Crucially, once a consumer is routed from the virtual agent to the human agent, they expect the conversation is only between themselves and the human customer service agent. They do not expect, nor do they have any reason to suspect, that the virtual agent or any sort of third party is listening in on the conversation.  After all, that is the point of being transferred.

---

[5] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si= NjkXMwHwCJXOIKyz&t=158.

24.    And yet, contrary to those expectations, Google is *still listening* even when a call is transferred from a virtual agent to a human agent. Specifically, a Google "session manager monitors the state of the conversation" with the human agent:[6]



A session manager monitors the state of the conversation.

25.    Google, through GCCCAI, does not simply listen in on the conversation between the consumer and the human agent though. It also "[t]ranscribe[s] calls in real time for agents to reference during the call or for analysis after the call."[7]

26.    In addition, Google, through GCCCAI, "grabs the context of the conversation to suggest articles and real-time, step-by-step guidance" to the agent.[8] In other words, Google, through GCCCAI, is actively analyzing the real-time contents of conversations between companies like Uber and their customers.

---

[6] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=NjkXMwHwCJXOIKyz&t=160.

[7] AGENT ASSIST, https://cloud.google.com/agent-assist?hl=en.

[8] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=szJ4Bfl9egcT5p1N&t=174.



27.     Further, through GCCCAI, Google provides "smart replies" to the agent based on Google's analysis of the real-time contents of the conversations:[9]



---

[9] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=DTnLsP36i4vO1NLD&t=188.

28.     For years, Uber has contracted with Google to listen in on conversations through GCCCAI, and for Google to provide at least all of the features mentioned above.

29.     Google profits from its provision of the GCCCAI service.  For instance, Google charges its clients "$0.03 per minute" for "Agent Assist for voice sessions with Summarization and other assist features."[10]

30.     When GCCCAI and its features are used on a telephone conversation, it is not like a tape recorder, or a "tool" used by one party to record the other.  Instead, GCCCAI involves Google – a separate and distinct third-party entity from the parties to the conversation – using GCCCAI to eavesdrop upon and record a conversation to which it is not a party.  This is so because Google itself is collecting the contents of any conversation, as alleged above.  Google also needs access to the data in order to service customers like Uber, such as through providing recommendations, analyzing customer intent, and transcribing conversations in real time.

31.     Google has the capability to use the contents of conversations it collects through GCCCAI.  For instance, in its "Service Specific Terms," Google has a section pertaining to "AI/MIL Services," which includes GCCCAI.[11]  In this section, Google states it can use "Customer Data" to "train or fine-tune any AI/ML models" with its clients' permission (but not the end user's permission).[12]  Thus, Google has the capability to use the wiretapped data it collects through GCCCAI to improve its AI/ML models (i.e., to improve the AI-based products and services Google provides).

32.     During consumers' calls to the Uber Contact Centers, Google and Uber fail to in-form consumers, prior to any recording: (i) that Google, a third party, is listening in on consum-ers' communications, (ii) that Google, a third party, is tapping or otherwise making an unauthor-ized connection with the consumer's telephone conversation using GCCCAI, and (iii) that the

---

[10] AGENT ASSIST PRICING, https://cloud.google.com/agent-assist/pricing.

[11] SERVICE SPECIFIC TERMS, https://cloud.google.com/terms/service-terms.

[12] *Id*.

content of consumers' confidential communications with the Contact Centers are being recorded, collected, intercepted, and analyzed by a Google, a third party, using GCCCAI.

33.    The GCCCAI service was designed to record and analyze real-time phone conversations.  As such, when Google provided the GCCCAI service to Uber, Google understood and therefore intended to record the communications of customers who called into the Contact Centers.

34.    At times, Google listens to, records, and monitors conversations that take place during customer calls to the Contact Centers regardless of whether these conversations take place inside the customer's residence, workplace, or place of business.

35.    Therefore, Defendant's conduct violates the rights of Californians set forth in CIPA § 631.

**III.    PLAINTIFF'S EXPERIENCE**

36.    Plaintiff Marquez called Uber's Contact Center in or about September 2025, from her home.

37.    In this conversation, Plaintiff Marquez reasonably expected her conversation with Uber to be only between herself and Uber, especially because she disclosed her name, phone number, and Uber account information.

38.    During the call with Uber, Plaintiff Marquez first interacted with a "virtual agent." Plaintiff Marquez was not aware, nor did she have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than Uber.

39.    On the call, Plaintiff Marquez then asked to be transferred from the virtual agent to a human customer service agent.  When Plaintiff Marquez's call was transferred to the human agent, she reasonably expected the conversation would be only between herself and the Uber human customer service agent.  She did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on her conversation with the Uber human customer service agent.

40.     Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff Marquez's entire conversation with the Uber human customer service agent.  Specifically, a Google session manager monitored the conversation between Plaintiff Marquez and Uber, and Google, through GCCCAI and its features, transcribed Plaintiff Marquez's conversation in real time, analyzed the context of Plaintiff Marquez's conversation with Uber using natural language processing, and suggested "smart replies" and news articles to the Uber agent Plaintiff Marquez was communicating with.

41.     Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff Marquez's conversation with Uber.

42.     Neither Uber nor Google procured Plaintiff Marquez's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff Marquez's conversation with Uber.  Nor did Plaintiff Marquez give her prior consent, express or otherwise, to Google or Uber to allow Defendant to wiretap her communications with Uber.

43.     Plaintiff Marquez has, therefore, had her privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

## CLASS ALLEGATIONS

44.     Plaintiff Marquez seeks to represent a Class defined as all residents of the State of California who called Uber from their residence, workplace, or place of business in California and had their conversations with Uber recorded, monitored, or listened to by Google using GCCCAI (the "Class").

45.     The following people are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel

and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

46.     **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons.  It is, therefore, impractical to join each member of the Class as a named Plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from records belonging to Defendant and Uber.

47.     **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

(a)     Whether Defendant violated CIPA § 631;

(b)     Whether Defendant sought or obtained prior consent – express or otherwise – from Plaintiff and the Class; and

(c)     Whether Plaintiff and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations.

48.     **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class, had the content of their communications read, learned, analyzed, and/or examined by Google.

49.     **Adequate Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

50.     **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.   Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation Of The California Invasion Of Privacy Act,
### Cal. Penal Code § 631(a)

51.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

52.     Plaintiff Marquez brings this claim individually and on behalf of the members of the Class against Defendant.

53.     CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).

54.     To establish liability under CIPA § 631(a), Plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

*Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

55.    GCCCAI is a "machine, instrument, contrivance, or ... other manner" used to engage in the prohibited conduct at issue here.

56.    Google is a separate legal entity that offers "'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Google was a third party to any communication between Plaintiff and members of the class, on the one hand, and Uber, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F Supp. 3d 891, 900 (N.D. Cal. 2023); *Turner v. Nuance Communications, Inc.*, 2024 WL 2750017, at *10 (N.D. Cal. May 28, 2024); *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024).

57.    At all relevant times, through GCCCAI and its features, Google intentionally tapped, electrically or otherwise, the lines of telephone communication between Plaintiff and members of the Class, on the one hand, and Uber, on the other hand.

58.    At all relevant times, through GCCCAI and its features, Google willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and members of the Class, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

59.     Plaintiff and members of the Class did not consent to any of Defendant's actions discussed above.  Nor Plaintiff or members of the Class consented to Defendant's intentional access, interception, reading, learning, recording, collection, and analysis of communications from Plaintiff and members of the Class.

60.     The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

61.     Pursuant to Cal. Penal Code § 637.2, Plaintiff and the Class Members have been injured by the violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Google's violations of CIPA § 631(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class under Fed. R. Civ. P. 23, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For statutory damages of $5,000 for each violation of CIPA § 631(a);

(e)    For pre- and post-judgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief; and

(g)    For an order awarding and the Class their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all issues so triable.

Dated: December 17, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _/s/ Neal J. Deckant_
       Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ndeckant@bursor.com

*Attorneys for Plaintiff*